# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

CHERYL PATIN                                    *CIVIL NO. 6:10-0650

VERSUS                                          *MAGISTRATE JUDGE HILL

BROCK RICHARD, ET AL.                           *BY CONSENT OF THE PARTIES

## REASONS FOR JUDGMENT

Pending before the court is a Motion to Dismiss filed by Lafayette City Police Officer Brock Richard ("Richard"), City of Lafayette Police Chief James Craft ("Craft"), the Risk Management Division of the City of Lafayette Department of Administrative Services ("Risk Management") and the Lafayette City-Parish Consolidated Government ("Lafayette"). [rec. doc. 10]. Plaintiff, Cheryl Patin ("Patin"), has filed opposition [rec. doc. 17], to which the defendants filed a Reply. [rec. doc. 22]. Oral argument on the Motion was held on November 17, 2010 and the matter was taken under advisement.[1]

Patin filed this  civil rights action on April 19, 2010.  In her Complaint, Patin asserts that her civil rights were violated when he was unlawfully arrested with the use of excessive force on October 2, 2006.  Patin attempts to assert claims for false arrest, false imprisonment, use of excessive force during arrest, retaliatory arrest, illegal search and malicious prosecution, as well as equal protection claims and the violation of her right to be "left alone".  Patin's claims are asserted under 42 U.S.C. § 1983 and Louisiana state law.

---

[1]The parties consented to the undersigned exercising the Court's jurisdiction. [rec. doc. 12].

Patin alleges the following facts which, she asserts, support her claims.  Six weeks prior to her October 2, 2006 arrest at issue in this case, Patin had been involved in an altercation at a local establishment, while playing pool.  Richard responded.  Patin allegedly asked Richard to file an incident report and arrest the persons involved in the altercation; Richard refused.  As a result, Patin filed a complaint with the Lafayette Police Department, which, after conducting an investigation, sustained Patin's complaint and disciplined Richard. [rec. doc. 1, ¶ 11].

Six weeks later, both Patin and Richard were at the same local restaurant.  Patin alleges that Richard approached her as she was on her way to the restroom stating that he knew that she was the woman who had reported him to internal affairs. [*Id.* at ¶ 13].  Patin did not know the officer about whom she complained was Richard; rather, initially, she thought that the officer was Earhardt and his partner Oglesby.  However, after being confronted by Richard, who was wearing his name tag, Patin realized that this officer, Richard, was the subject of her prior complaint.  [*Id.* at ¶ 15].  Patin requested Richard's card, but, after showing Patin the card on which Richard's girlfriend had written her telephone number, Richard tore it up.  [*Id.* at ¶ 16 and 17].  As she walked away, Patin said something about Richard, wishing that she, Patin, had a pool stick, to which Richard responded, asking if Patin was threatening him. [*Id.* at ¶ 18].

Patin then went to another area of the restaurant. [*Id.* at ¶ 19].  Thereafter, she went outside to talk on her cellular phone.  [*Id.* at ¶ 20].  Richard apparently called 911, presumably for backup, and then existed the restaurant.  [*Id.* at ¶ 27 and 21].  Richard approached Patin and told her she was going to jail, then grabbed her purse (presumably to get Patin's identification)

2

and told her that she was "resisting an officer." [*Id.* at ¶ 21-22].  Patin called 911 requesting

assistance from a Deputy Sheriff, not a Lafayette City Police Officer.  Richard then said that

Patin was drunk, slapped Patin, grabbed her by the arms, threw her against the wall, slamming

her face into it, pinning her arms behind her, purportedly to place handcuff's on Richard.  [*Id.*

at ¶ 23].

Patin was arrested and charged with disturbing the peace by intoxication, threatening a

public official, simple battery and resisting an officer.  [*Id.* at ¶ 24].  Patin was transported to

the Lafayette Parish Jail, where she was detained "in excess of eight hours." [rec. doc. 1-5, ¶ 5].

Patin denies that she slapped Richard as he alleged in his incident report, and that she

only found out about this accusation when she was released from jail and read Richard's report.

[rec. doc. 1, ¶ 24].  She further alleges that Richard falsely stated in the report that Patin had

made threatening statements to him.  [*Id.* at ¶ 25].

On March 5, 2008, Patin went to trial in the Lafayette City Court.  [*Id.* at ¶ 28].  Patin

was convicted of battery on a police officer, but was acquitted of all other charges.[2]  [*Id.* at ¶ 26

and 32].  On April 20, 2009, the Louisiana Third Circuit Court of Appeals granted Patin's

request for writs, and reversed, vacated and set aside Patin's conviction. [*Id.* at ¶ 32; rec. doc.

1-2].  In reversing Patin's conviction, the court found that Richard had "no legal justification to

_____

[2]From the allegations in her Complaint,  is unclear if Patin was convicted of simple battery or
battery on a police officer. However, Judge Hebert's June 27, 2008 Order dismissing Patin's appeal for
lack of jurisdiction indicates that Patin was convicted of battery on a police officer. [rec. doc. 10-2].  For
purposes of this Ruling, the undersigned refers to the conviction in accordance with Judge Hebert's
Ruling, that is, battery on a police officer.  The analysis is the same for either offense.

3

attempt to either grab, or reach into [Patin's] purse" as there were no grounds for his questioning Patin or his having demanded her identification, as required under La.C.Cr. P. art. 215.1.  Thus, "if [Patin] struck the officer, as alleged, she did so in an attempt to prevent an unlawful intrusion into her purse" which is a justifiable use of force under La.R.S. 14:19(A). [rec. doc. 1-2].

Thereafter, on September 1, 2009, Patin filed a second complaint against Richard. [rec. doc. 1, ¶ 34].  By letter dated November 9, 2009, Chief Craft advised Patin that he was assigning her complaint a status of unfounded, based on the information gathered during his investigation. [*Id*. at ¶ 35].

By the instant Motion, the defendants assert that all of Patin's claims, except her claim for malicious prosecution, have prescribed. The defendants further assert that Patin has failed to state a constitutional claim for malicious prosecution or violation of her right to equal protection.  Risk Management asserts that it is not a juridical entity capable of being sued.

**Rule 12(b)(6) Motion to Dismiss Standard**

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); Fed  R. Civ. P. 12 (b)(6).

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.  *Ramming v. United States*,

281 F.3d 158, 161 (5th Cir. 2001).  In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Lormond v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

However, this principle is subject to some limitations.  First, conclusory allegations and unwarranted deductions of fact are not accepted as true.  *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982) *citing Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins*, 224 F.3d at 498.  Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).[3]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.  The plaintiff's obligation is "to provide the 'grounds' of his 'entitlement to relief' [and] requires more than mere labels and conclusions." *Id*. at 1964-1965 *citing Papasan*, 478 U.S. at 286.   The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more . . . than . . . a statement of facts that merely creates a

---

[3]The *Twombly* Court explicitly disavowed the oft-quoted generally accepted rule in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80(1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S.Ct. at 1968-69 *quoting Conley*, 355 U.S. at 45-46.

5

suspicion [of] a legally cognizable right of action." *Id. at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004). The plaintiff must "raise a right to relief above the speculative level." *Lormand*, 565 F.3d at 232. Therefore, if a plaintiff fails to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 127 S.Ct. at 1974.

## LAW AND ANALYSIS

### I. One Year Limitation Period

The Supreme Court has held that the statute of limitations for a § 1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim arose. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). Thus, the Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by Louisiana Civil Code article 3492 for a § 1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

Even though the applicable statute of limitations is governed by state law, the date the cause of action accrues for a § 1983 claim, so that the limitation period begins to run, is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007); *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). Under federal law, in general, the period begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998); *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). Thus, in general, the limitation period begins to run on that date.

With respect to claims for false arrest, where, as in the instant case, the arrest is followed by criminal proceedings, the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process", not when the criminal prosecution terminates in favor of the accused. *Wallace v. Kato,* 549 U.S. 384, 396, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007); *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) (holding that *Wallace* abrogates *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir.1995) which held that a false arrest cause of action accrues when the criminal prosecution terminates in favor of the accused).

The *Wallace* Court further found that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter . . . ." *Id.* at 1095.   Thus, the Court referred to the two torts together. *Id*.   Accordingly, because "unlawful detention remediable by the tort of false imprisonment is detention without legal process," the Court held that, the limitations period begins to run in an action for false imprisonment on the date that the alleged false imprisonment ends, that is, when the accused becomes held pursuant to legal process. *Id*. at 1095-96.  From that point on, the accused's claim is based on malicious prosecution. *Id*. at 1096.

The Court explained that a person becomes held pursuant to legal process when, for example, she is bound over by a magistrate for trial or arraigned on the charges. *Id*  In other words, in false arrest and false imprisonment claims, damages only accrue through the time period in which the detention is without legal process; once a plaintiff's detention is pursuant to

legal process, the false arrest and false imprisonment comes to an end, and the separate tort of malicious prosecution begins. *Wallace*, 127 S.Ct at 1096.

Here, Patin complains of that she was wrongfully arrested by Officer Richard on October 2, 2006.  While the record does not reflect the date that Patin was arraigned or bound over for trial, it is clear that petitioner was tried on March 5, 2008.  Thus, Patin was held pursuant to legal process, at the latest, on that date.  Thus, under federal law, Patin's claim for false arrest and false imprisonment accrued, at the latest, on March 5, 2008, when Patin was tried on all charges.[4]  Since Patin's claim accrued, at the latest, on March 5, 2008, Patin had one year, or until March 5, 2009 to file her federal § 1983 action.  However, this action was not filed until April 19, 2010, over one  year after her claims accrued and over one month after the limitation period had expired.  Thus, Patin's  § 1983 claims for false arrest and false imprisonment are clearly barred by the one year statute of limitations, and these claims must be dismissed on this basis.

Similarly, all of Patin's related claims for the use of excessive force during her October 2, 2006 arrest, retaliatory arrest and illegal search, as well as Patin's claims for right to be "left alone" violations are likewise barred by the one year statute of limitations.  Clearly, on the date

---

[4]Although the undersigned acknowledges that since Patin was not physically detained beyond the date of her arrest when she spent over eight hours in the Lafayette Parish Correctional Center and presumably was bonded out, the limitations period probably began on the date of Patin's arrest.  Indeed, this is the date urged by the defendants. However, in light of the Court's decision in *Wallace* and the Fifth Circuit's decision in *Mapes*, the undersigned is compelled to afford Patin the benefit of the later date, when it is certain that Patin had been subject to legal process, or, stated differently, when her damages no longer arose as a result of an absence of legal process. *See Wallace*, 549 U.S. at 390, 127 S.Ct. at 1096 (distinguishing the torts of false arrest and false imprisonment from malicious prosecution because the later does not remedy detention unaccompanied by, or in the absence of, legal process).

of her arrest, October 2, 2006, Patin either knew or should have known both the injury and the facts on which these constitutional violation are based, whether or not she realized a legal cause of action existed.  *See Gonzalez*, 157 F.3d at 1020; *Piotrowski*, 51 F.3d at 516. Accordingly, under federal law, Patin's claims on these causes of action accrued, at the latest, on October 2, 2006.  Since the instant lawsuit was not filed until over three and one-half years later, these claims are clearly barred by the one year statute of limitations.  These claims should therefore also be dismissed on this basis.[5]

## II.  Malicious Prosecution

There is no federal constitutional claim based solely on the tort of malicious prosecution. *See Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (*en banc*). Stated differently, the state law tort of malicious prosecution is not coextensive with a "constitutional tort" as there is no "freestanding constitutional right to be free from malicious prosecution." *Id*. at 945.  Thus, merely alleging and proving the elements of the state law tort of malicious prosecution will not set forth a Constitutional claim.  *Id*.  Because the state law tort requires the initiation of charges without probable cause to state a constitutional claim for malicious prosecution, the plaintiff must allege something more, that is, an accompanying constitutional

---

[5]Patin argues that the one year prescriptive period should be tolled under the Louisiana doctrine of *contra non valentum*, the continuing violation theory or fraud or concealment.  None of these arguments are well taken in light of the above.  Moreover, it is clear that under the facts presented in this case, none are applicable.  *Contra non valentum* does not apply because Patin knew or should have known that she had a cause of action on the date of her arrest,  there has been no series of related acts for application of the continuing violation theory, nor has there been any factual showing that material facts were fraudulently concealed by the defendants with respect to any of the prescribed claims, as required for the application of the doctrine of *contra non valentum*.

violation during prosecution.  *Id.* at 945 and 953-954.   Thus, "causing charges to be filed without probable cause will not without more" support a constitutional malicious prosecution claim.  *Id.* at 953.

Furthermore, claims alleging due process violations which concern only "the malicious initiation of a baseless criminal prosecution . . ." are likewise not cognizable.[6]   *Id.* at 956-957.  Rather, events at trial leading to a wrongful criminal conviction, such as perjury or the use of manufactured evidence, may suffice to supply the "constitutional footing for a claim seeking recovery for damages arising from the trial and wrongful conviction, as opposed to . . . [those for] arrest and pretrial detention."  *Id.* at 959.

Here, Patin does no more than recite the state law elements for the tort of malicious prosecution.  The entirety of her claim, whether based on the Fourth or Fourteenth Amendments, stems from her alleged arrest without probable cause, neither of which transforms her state law tort claim into a federal malicious prosecution claim.  It is clear that neither Patin's alleged arrest without probable cause, nor the alleged initiation of baseless criminal charges against Patin, inevitably led to her wrongful conviction.  As such Patin has failed to state a constitutional claim for malicious prosecution.

Moreover, there is no event which occurred at trial upon which Patin may rest her claim.  While Patin suggests that the Third Circuit's ruling elevates her claim to constitutional dimension, that argument is without merit.  The Third Circuit merely found that there was no

---

[6]The Fifth Circuit explained that "the umbrella of the Fourth Amendment . . . casts its protection solely over the pretrial events of a prosecution."  *Id.* at 959.

probable cause for Richard to have initially questioned Patin, demanded her identification or grabbed her purse.  The court did not find that there was any constitutional violation which occurred at trial which led to her wrongful conviction.  To the contrary, the infirmities found by the court occurred prior to trial.[7]  Likewise, there is no basis for Patin's suggestion that her conviction was found invalid because she did not slap Richard as Richard alleged in his incident report.  To the extent that he so testified at trial, the Third Circuit did not find that Richard testified falsely, or that Patin did not, in fact, slap Richard.  The Court merely found that Patin's use of force (if it occurred at all) was, under the circumstances, justifiable.

   For these reasons, Patin's "constitutional" malicious prosecution claim will be dismissed for failing to state a viable constitutional claim.

## III.  Equal Protection

      Patin alleges that the defendants have a policy whereby they deny "equal protection to citizens who have been maligned or suffered injustice at the hands of the Lafayette City Police" by identifying and targeting aggrieved persons for treatment different from other citizens. [rec. doc. 1, ¶ 37].  More specifically, Patin claims that the defendants target those who have "potential claims of civil liability" against the Lafayette City Police and pursue "bogus" criminal prosecutions against them, purportedly to "limit or negate potential civil liability." [Id. at ¶ 42 and 37].   She further alleges that these "bogus" criminal charges are used by the

---

      [7]Patin's allegation that Richard falsely stated in his report that Patin had made threatening statements to him is not relevant to Patin's conviction for battery on a police officer; threats are not an element of the crime.  See rec. doc. 1, ¶  25.

City Attorney as a "poker chip" to induce victims of police brutality to dismiss or waive their civil claims in exchange for dismissal of the criminal charges. [*Id.* at ¶ 40 and 41].

Initially, the undersigned notes that, to the extent that Patin complains that her right to equal protection was denied as a result of her alleged targeting for unjustified criminal charges, either as a result of the incident preceding her October 2, 2006 arrest or the October 2, 2006 arrest, in accordance with the above analysis, that claim is prescribed. *See Piotrowski*, 237 F.3d at 577-578.

The equal protection clause essentially directs that all persons similarly situated be treated alike.  *See City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1989). To state an equal protection claim a plaintiff must allege, *inter alia*, that similarly situated individuals were treated differently. *Stoneburner v. Secretary of the Army*, 152 F.3d 485, 491 (5th Cir. 1998) *citing Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992); *Wheeler v. Miller,* 168 F.3d 241, 251 (5th Cir. 1999); *Piotrowski,* 237 F.3d at 578 fn. 15.  Ordinarily equal protection claims are premised on allegations of class-based discrimination. *Wheeler*, 168 F.3d at 252.  Thus, a plaintiff  must also allege purposeful or intentional discrimination motivating the state action which caused the complained-of injury.  *Stoneburner*, 152 F.3d at 491 *citing McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Piotrowski,* 237 F.3d at 578 fn. 15  (citations omitted).

Here, Patin fails to allege that she was treated differently than similarly situated persons. To the contrary, Patin alleges that by identifying and targeting her for "bogus" criminal prosecution, the defendants treated her exactly as other similarly situated persons – those who have been "maligned or suffered injustice at the hands of the Lafayette City Police" and therefore have "potential claims of civil liability."  Furthermore, the Complaint fails to allege that the complained of actions were motivated by any purposeful or intentional discrimination against Patin based on an impermissible classification.  Patin makes no allegations which would support an inference of purposeful or intentional discrimination played any part in her prosecution, much less that any such discrimination was based on any impermissible classification.

The same is true with respect to Patin's claim that the defendants "whitewashed" her second complaint against Richard to insulate them from civil liability. [rec. doc. 1, ¶ 44].  In essence, Patin claims that she was individually singled out for unfair treatment – that she is a "class of one."  Patin fails to allege any other similarly situated person, much less a class of such persons, who was subjected to alleged inadequate investigation of a complaint.  Indeed, Patin's Complaint refutes any such allegation as she admits that her first complaint against Richard was sustained and, accordingly, Richard was disciplined. [rec. doc. 1, ¶ 11].

Finally, Patin's claim based on the alleged inadequacy of the  investigation of Patin's second complaint does not state a viable § 1983 claim because there is no constitutional right to an investigation of such a complaint in the first instance. *See Vinyard v. Wilson*, 311 F.3d 1340,

1356 (11th Cir.2002); *Crenshaw v. Lister*, 2008 WL 151881, *8 (M.D. Fla. 2008); *see also Jordan V. Davis*, 2007 WL 1959037, *3 (E.D. Ark. 2007). Moreover, the alleged failure to conduct a proper internal investigation has not prevented Patin from exercising her First Amendment right of access to the courts by challenging the conduct which was the subject of her complaint. in this § 1983 action.

## IV.  Risk Management

For a plaintiff to sue a city department, it must enjoy a separate legal existence from the city. *Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991). Parties must have the capacity to sue or be sued. Fed. R. Civ. P. 17. The same is true under Louisiana law. Article 24 of the Louisiana Civil Code provides in relevant part: "A juridical person is an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. *See Boudreaux v. Bourgeois,* 1999 WL 804080, *3 (E.D. La. 1999) *citing Norwood v. City of Hammond*, 1999 WL 777713 at *2-3 (E.D. La. 1999).

Risk Management is merely a division within the City of Lafayette Department of Administrative Services. *See* Lafayette Consolidated Government Code Section 4-05 and Section 4-01. Risk Management is not the insurer of the Lafayette City-Parish Consolidated Government.[8] As such, it is not a juridical entity capable of being sued, separate or independent of the Lafayette City-Parish Consolidated Government, which is a named defendant herein. Accordingly, Risk Management is properly dismissed from this lawsuit.

---

[8]The Court notes that the City of Lafayette web site refers to Risk Management as an insurer.

## V. *Monell*/Official Capacity Claims

Local governmental entities may be sued under §1983; however, they may not be held vicariously liable under the doctrine of *respondeat superior*.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Rather, such a claim requires *Monell* proof of an official policy[9] or custom[10] as the cause of the constitutional deprivation.  *Turner v. Houma Municipal Fire & Police Civil Service Board*, 229 F.3d 478, 483 fn 10 (5th Cir. 2000) *citing Monell v. Department of Social Services*, 436 U.S. 658 (1978);  *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).[11]

Even if Patin has alleged an official policy, custom or procedure, because Patin has failed to state a claim against Richard or Craft, there is no underlying constitutional violation

---

[9]"An official policy, for purposes of §1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) *quoting  Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*).

[10] Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Campbell*, 43 F.3d at 977 *citing Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990) (en banc). As discussed above, there is no allegations or evidence of any persistent, widespread practice for purposes of  liability or precluding summary judgment herein. The singular incident described herein is insufficient. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) *citing  Snyder v. Trepagnier,* 142 F.3d 791, 798-99 (5th Cir. 1998) and *Belt*, 828 F.2d at 304-305; *Board of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

[11]In *Monell,* the Court held that local governmental entities may be sued under §1983. However, they may not be held vicariously liable under the doctrine of *respondeat superior*.  Thus, a governmental entity may not be held liable merely because it employs a tortfeasor.  Liability must be based upon allegedly unconstitutional conduct which "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels."  *Id.* at 690-91.

for which the municipal defendant, the City of Lafayette, can be derivatively liable on the basis of its policies or customs.  *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished); *Breaux v. Brown,* 2006 WL 3760242, *2 (W.D. La. 2006); *Ashford v. City of Lafayette*, 2008 WL 5157900, *11 (W.D. La. 2008); *Daniels v. City of Dallas*, 2007 WL 2059742, *10 (N.D. Tex. 2007).

Moreover, because Patin has failed to set forth a viable constitutional claim against Richard in his individual capacity, in the absence of any underlying constitutional violation, Patin cannot establish a claim against any of the named officers in their official capacity as such a suit is tantamount to a suit against their municipal employer.[12]  *Id.*

Accordingly, to the extent that Patin asserts any official capacity claim against the defendant officers or the Lafayette City-Parish Government, those claims are properly dismissed.

## VI.  State Law Claims

In light of the above, all federal claims asserted against  Richard, Craft,  Risk Management and the Lafayette City-Parish Consolidated Government will be dismissed. Accordingly, no federal question remains before this court.

---

[12]An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159 (1985); *Brandon v. Holt*, 469 U.S. 464 (1985); *Hafer v. Melo*, 112 S.Ct. 358 (1991); *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999).

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001).  Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.  *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) *citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).  However, the dismissal should be without prejudice.  *Id*.  Accordingly, the undersigned declines supplemental jurisdiction over the state law claims asserted by Patin.  Those claims will be dismissed without prejudice.

Signed this 30th day of December, 2010 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

17